UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE APPLICATION OF THE )
UNITED STATES OF AMERICA )
FOR AN ORDER AUTHORIZING THE ) MISC. NO. 3:21mj706 (SDV)
INSTALLATION AND USE OF A PEN )
REGISTERS AND TRAP AND TRACE )
DEVICES AND ACQUISITON OF CELL-SITE ) Filed Under Seal
INFORMATION )
)

JUL 21 2021 AM 11:85
FILED - USDC - BPT - CT

## APPLICATION

The United States of America, moving by and through Rahul Kale, Assistant United States Attorney for the District of Connecticut its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C. §§ 3122-24 and 18 U.S.C. § 2703(d), authorizing the installation and use of a pen register and trap and trace device ("pen-trap devices") on cellular telephone assigned call number **(203) 512-4593 (the "Target Telephone"), which is provided service by T-Mobile (Sprint)**, the acquisition of certain approximate location information for the Target Telephone, and other dialing, routing, and signaling information that may be associated with communications to or from the Target Telephone, as described in the Attachments to the proposed Orders, in connection with a criminal investigation conducted by the Federal Bureau of Investigation ("FBI") of unknown individuals regarding possible violations of Title 18, United States Code, Section 1962(d) (racketeering conspiracy).

In support of this application, the United States asserts:

## LEGAL BACKGROUND

1. The Court may authorize the installation and use of pen-trap devices to collect prospective dialing, routing, signaling and addressing information associated with wire and electronic communications, not including the contents of any communication, pursuant to 18 U.S.C. §§ 3122-24. The Court may order a cell phone provider to disclose records or other information relating to the provider's subscribers pursuant to 18 U.S.C. §§ 2703(c)(1) and (d). Based on the combined authority of these statutes, the United States seeks prospective location information and other dialing, routing, signaling and addressing information concerning communications originating or terminating from the cell phone.

2. 18 U.S.C. § 3123(a)(1) gives the court the authority to authorize the installation and use of pen-trap devices anywhere within the United States, where the Court finds that an attorney for the Government has certified to the Court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. Under 18 U.S.C. § 3122(b), an application for the authorization of a pen-trap device must include three elements. (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure. The law enforcement agency conducting the investigation is the FBI.

4. In the next section of this application, the applicant will certify that the information likely to be obtained through this order is relevant to this ongoing criminal investigation.

5. T-Mobile (Sprint) (hereinafter "the Provider") is a provider of electronic communications services, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order, issued under 18 U.S.C. §§ 3122-24 and 18 U.S.C. § 2703(d), to require the Provider to disclose the requested information.

6. A court order under 18 U.S.C. § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records or other information described in Section II of the Attachment is relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

7. A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with service providers, who maintain antenna towers covering specific geographic areas. In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

8. In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded

3

unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cell phone to a cellular antenna or tower – are like the telephone numbers of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, electronic signals can be sent to the cell phone that will cause it to emit its unique identifiers. The information collected can be used to attempt to determine the physical location of the cell phone.

9. The Provider is a company that provide cellular telephone access to the general public. Providers of cellular telephone service have technical capabilities that allow them to collect data that identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received radio signals from particular cell phones ("cell-site" location information). For each communication a cell phone makes, its cellular providers can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. Many cell towers divide their coverage up into multiple sectors (most often three 120° sectors). Where this is the case, the provider can usually identify the sector of the tower that transmitted the communication. However, cell towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the

tower closest to the cell phone does not necessarily serve every call made to or from that phone. Accordingly, this cell-site information allows law enforcement to determine only the general location of a cell phone.

10. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents. A cell phone can also be used to exchange text messages with email accounts. Email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

## FACTUAL BACKGROUND

11. The factual background is contained in the Affidavit of FBI Special Agent James R. Domchowski, dated July 20, 2021, which is incorporated into this request.

A. Pen-Trap Device for Target Telephone

12. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap device is relevant to an ongoing criminal investigation being conducted by the FBI as required by 18 U.S.C. § 3122(b)(2). Similarly, the facts set forth above show that there are reasonable grounds to believe that the records and information described in Section II of the Attachments are relevant and material to an ongoing criminal investigation, as required by 18 U.S.C. § 2703(d). Specifically, this information will help the United States identify and locate the individual(s) who are responsible for the events described above, and determine the nature and scope of their activities.

13. For the reasons stated above, the United States requests that the Court enter an Order authorizing: a) the installation and use of a pen-trap device to record, decode, and/or capture the information described in the Attachment for the Target Telephone, without geographic limit, and b) to permit the FBI to utilize electronic equipment to cause the Target Telephone to emit their unique identifiers.

14. The United States is not seeking, pursuant to this Order, to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8), or to obtain GPS data.

15. The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

16. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order the Provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the FBI, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

17. The United States further requests that the Court order that the FBI and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

18. The United States further requests that the Court order the Provider and any other person or entity whose assistance may facilitate execution of this Order to notify applicant and

the FBI of any changes relating to the Target Telephone, including changes to subscriber information and to provide prior notice to the applicant and the FBI before terminating or changing service to the Target Telephone.

19. This Court has jurisdiction to issue the proposed Order because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated (including a magistrate of that court). *See* 18 U.S.C. § 2711(3)(A)(i).

20. The United States further requests that the Order require the Provider, and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, including to the subscriber(s) of the Target Telephone the existence of this application and Order, the resulting pen-trap device, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court. *See* 18 U.S.C. § 2705(b) and 18 U.S.C. § 3123(d)(2). Such a requirement is justified because the Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution and/or destroy or tamper with evidence.

21. The United States further requests that the Court order that this Application and any resulting Orders be sealed until further Order of the Court. *See* 18 U.S.C. § 3123(d)(1). As explained above, these documents discuss an ongoing criminal investigation that is neither public

nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their disclosure may seriously jeopardize that investigation.

22. The United States further requests that the Order require T-Mobile (Sprint) not to notify any person, including the subscribers or customers of the account listed in Attachment A of the existence of the Order until further order of the Court. See 18 U.S.C. § 2705(b). Such a requirement is justified because the Order relates to an ongoing criminal investigation the full scope and extent of which is neither public nor known to all of the subjects of the investigation. Accordingly, there is reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving subjects an opportunity to destroy or tamper with evidence, change patterns of behavior, or notify confederates. See 18 U.S.C. § 2705(b)(2), (3), (5).

Executed on July 20, 2021

Respectfully submitted,

RAHUL KALE
Digitally signed by RAHUL KALE
Date: 2021.07.20 13:15:27 -04'00'

RAHUL KALE
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv02526
United States Attorney's Office
1000 Lafayette Blvd., 10th Floor
Bridgeport, Connecticut 06604
(203) 696-3000